The next case is Gibson v. SCE Group. Starting with Mr. Goloszewski. Goloszewski, Your Honor. Goloszewski. Good morning. May it please the Court. John Goloszewski on behalf of the appellants. I have three distinct issues I'd like to address concerning the District Court's decision. The first is the decision, after granting Plaintiff Jessica Bersiaga summary judgment on her right of publicity claim, to deny her a trial on the issue of damages. Our position is laid out in our papers. Did she request it after the judge said it would be tried separately? Did she request, re-request a jury trial? We requested a jury trial in our complaint, Your Honor, absolutely. And how it happened procedurally is that summary judgment was granted to Ms. Bersiaga, as well as the rest of the summary judgment decision, and in that very decision, Judge Ramos instructed the plaintiffs to provide briefing on Ms. Bersiaga's damages. In that briefing, we did note that we believed we were entitled to a jury trial. The one case that Judge Ramos cited is the Jones case at the Southern District of New York, which was a default judgment case, wherein the magistrate in the report and recommendation addressed sua sponte, the idea that even on a Section 51 case, and in Section 51 there is a specific reference to jury assessment of exemplary damages, even in that case, when a judge is acting as a finder of fact, the judge may also act as the arbiter of damages. Counsel, my notes suggest that she filed memoranda in support of her requested damages amount, along with the expert's analysis, and at no point in either filing did she object to the court's decision to order supplemental briefing or reiterate a request for a jury trial. She did not do it at that point. I'm not clear, Your Honor. First of all, in our reply brief, we did reiterate... Sorry, could you speak a little closer to the mic? Of course, I'm sorry. Thank you. In our reply brief, we did, in fact, state that we were entitled to a jury trial. You can't raise that one up. Okay, I'm sorry. I'm sorry. We did, in fact, request a jury trial. In our complaint, we are aware of no authority that says we need to re-request a jury trial. We were instructed by the district court to provide briefing. I was not in a position. I handled the underlying case. But she never again requested, reiterated her request for a jury trial. When she did the briefing, when she put the expert analysis in, she just didn't ask for it when it was clear that the judge was going to decide this issue. I'm unclear what procedure there would be, Your Honor, for her to re-request a jury trial. She had specifically requested a jury trial. You requested a jury trial. You could do it as part of your supplemental briefing. Which we did. We say specifically we are entitled to a jury to hear this evidence. Can you tell me where in your briefing you said that? Because I do have, as my colleague mentioned, I see the four of the foregoing reasons, plaintiff respectfully requests the proposed judgment be submitted, be entered by the court, and this court grant other relief as is just, and there's a proposed judgment submitted. I mean, all of this looks as though your client is acquiescing to the court essentially adjudicating the damages as a bench trial. But you're telling us no, we reiterated, no, no, no, this needs to go to a jury. Tell me where that was. Ms. Berkley, this is in, they acknowledge this, respondents acknowledge this in their reply papers. The issue is ripe for trial on damages or at minimum a hearing. It's unclear to us how we sort of acquiesced to a bench trial when we had demanded a jury trial and we were instructed to provide briefing on damages. Whereas, that is, we were in no position at that time to say to Judge Ramos, we disagree. We are not going to provide briefing on damages. No, let me ask, go ahead. Please. A slightly different question also related to damages, though. So do you argue that any of the district court's factual findings on which it rested as damages award were erroneous? I believe the exclude. I mean, he made a calculation that you, you know, you wouldn't have, that wasn't your preferred calculation, but were there any disputed facts on which he based his calculation? The dispute is Ms. Bersiaga in an identical lawsuit received a jury award of 10 times that amount about three months later. That doesn't tell me that there are any particular facts that the district court got wrong. I disagree. This wasn't technically a Dalbert briefing, but I disagree absolutely with the entirety of the analysis. I'm asking were there any facts that the district court got wrong? They did. For example. Which is this. Yeah. Fair market value, as Judge Pooler recognized in Electra, is the fair market value is the measure of damages in a right of publicity case. And what Judge Ramos did was look at certain contracts, including contracts for the underlying photograph edition here, and say, well, I'm going to look at this number, this number, this number, and we're going to come up with this number. That's not how you calculate fair market value. Fair market value is calculated by what the defendant, the defendant in this case is a gentleman's club, should have paid the plaintiff. That is how it's calculated. I understand that you agree with the calculation, the kind of approach to the analysis, but I'm also still not hearing that there were any particular facts that he relied on that. Well, I don't disagree. Okay. You're just saying the analysis is just totally misplaced. The analysis is misplaced. I don't disagree that certain contracts were for that amount of money. I don't disagree with any of those. I disagree that he misapplied the fair market value analysis. That's the point. And I also disagree that there was at any point we were obligated to reiterate a request for a jury trial. Again, that Jones case, the only time a judge can act as a fact finder is when the parties agreed to it. A fact finder has to damage it. This is when the parties agreed to it or he has acted as fact finder on liability. That was not the case here. Nobody agreed to that situation. So can you, can you, I'm still trying to find. So I'm looking through your memo in chief, but you say it's your reply memo before the district court where you invoked or re-invoked the jury trial, right? Can you, can you, and if it's not something you can do quickly, you can send it afterwards. I just, it would be helpful to see that. Sure. If you just bear with me for one moment. Or you can wait and tell us about it when you stand back up and rebuttal. I can tell you that it is at J.A. I'm sorry. It's fine. Use your time. Thank you. I will direct you to it. I have the reply. The next issue I'd like to talk about is this false by necessary implication doctrine. In the Time Warner case, this court specifically held that if the words or images considered in context necessarily imply a false message, the need for extrinsic confusion is, evidence of extrinsic evidence of confusion is relieved. There are no questions these ads are false. Judge Ramos repeatedly referenced the falsity of these advertisements. And following Time Warner and the various other cases that have applied this doctrine, what should have followed is a finding that there was of confusion because there was no need of extrinsic evidence of that confusion. Now, what Judge Ramos said was, well, that's not the case because these ads are open to interpretation, which we both agree with. But it doesn't matter because every single interpretation of those advertisements is false. There are four possible interpretations. One is that, we'll take Ms. Bersiaga, is a dancer there? One is that she approved the use of her image. One is that she endorsed the club. And the fourth and the most innocuous, and I don't agree they're entitled to the most innocuous interpretation, is that she agreed for a fee to license her image to the club. Every single one of those is false. Why are those the only four? I mean, why isn't just see the photograph, you think that someone who, you know, looks and presents herself in this way is likely to be either seen at the club as performing or a patron of the club? I don't understand why it's not a more generic message that's sent by the display. But that would be false as well. I mean, the issue is whether – That someone who looks, you know, is an appealing physical presence is like – that would be false? Judge Ramos was fairly clear in his analysis of the defamation claim that the they had written about Come See Our Gorgeous Dancers or whatever it was. That absolutely made a false statement. He says later, earlier at page 18 of the opinion, Plaintiffs never endorse defendants. These endorsements imply an association between plaintiffs and defendants because they juxtapose plaintiffs' pictures with text referencing defendants' clubs. This is what the court's saying. He's not saying maybe it's a patron. He's saying they imply an endorsement. That is a false statement. And the question is, what advertising activity are we protecting here? Everybody agrees that these advertisements are false. There's no question about it. That is why the doctrine has been established. And the idea that it only arises in the false advertising context, which Judge Ramos alluded to, or that he doesn't have to, which was a fairly remarkable statement, he doesn't have to reach the issue because defendant respondents had already agreed to remove the advertisements. A, it's a problematic approach. B, it's false. Those advertisements containing my clients remain up on those social media pages today because there has been no order instructing them to take them down. If I may, just the last issue I'd like to do. I think you want to save that when you come back. Sure. Thank you. I've moved it a little bit over. Keep it moving and we'll hear from Mr. Sampson. Yes. May it please the Court, Diane Sampson, and Klausie Miller for the defendants in the case. Let me address the two issues that counsel for the plaintiff addressed first. In answer to your question, Judge Carney, about that, were there any issues of fact with respect to Ms. Persiaga? No, there were not. What happened was that the district court judge ordered briefing on the subject of damages as an extension of the summary judgment process. No one objected to that. Briefs were submitted. Evidence was submitted. What does this mean as an extension of the summary judgment process? Damages isn't a summary judgment question, other than the question of whether a jury could find damages of some range. I would say it is a summary judgment question if there's no issues of fact, Your Honor, and there turned out to be no issues of fact yet. All right. So if there's no issues of fact, you think that that means there's only one number of damages that the jury could have chosen to award? No, I didn't say that. I'm sorry. I didn't say that. Here's what happened. The party submitted briefing. They submitted evidence to the trial court judge, district court judge. The district court judge excluded some of that evidence. No one objected. And then on the basis of three contracts to which the judge did not reject, he said, well, here's what they are. One was, like, for $2,000. One was for $3,000. One was for $3,500. And he said, well, I'm going to award this plaintiff $5,000, which was in excess of all three of the contracts, which were then before the court. Okay, but I get the notion that – I get the argument that there was a waiver of the jury demand. It seems like you're making an argument that this is a legal determination that's appropriate for summary judgment and the jury demand is irrelevant. I'm saying that under the circumstances here where there were no factual disputes as to what should be reviewed by the district court, the district court, pursuant to the briefing that he ordered, had the right and obligation to make a determination of what the damages were. So if you had a car accident and liability was established and the amount of the medicals was uncontested and the scope of the injuries experienced by the plaintiff was uncontested and all of that was undisputed, a judge could go ahead and decide the damages that they were entitled to? Well, I think the judge could decide if the evidence before the judge is undisputed. No one disputed these contracts that were before the judge. Nobody disputed the amount of the contracts on which the court resolved the issue of damages in this case. So I think it was quite appropriate for the judge to do that. Was a constitutional argument made before the district court? No, it was not. The other issue raised by plaintiff's counsel has to do with the presumption issue. It's appropriate to do away with evidence of likelihood of confusion. My initial response to that argument is that the plaintiffs have not cited a single case regarding false endorsement or really any case involving Section 1125A1A, which includes false endorsement, includes sponsorship, where a judge or court has held that evidence of likelihood of confusion is unnecessary. And the most recent case I would suggest is the electric case, in which the district court found that there was a false endorsement with respect to the use of the photographs by the plaintiffs, nevertheless went forward and evaluated the likelihood of confusion under the Polaroid factors, found that most of the plaintiffs did not comply with those, did not meet those standards, and found in favor of the defendants on summary judgment, despite the finding of false endorsement. Now you described that as the most recent case. I'm assuming Sousa would also be the Sousa case that we decided, what, a month ago? I missed the Sousa case, and I'm embarrassed to say that, Judge, but I haven't read the Sousa case. And for that reason, I guess we cited the district court case and Sousa in our brief, but I did not review the court of appeals decision. Counsel? Yes. Are your clients still using pictures of women without getting licensure? I'm not aware of that one way or the other, Your Honor. Has this lawsuit changed their behavior? In other words, you don't know? You might have advised them that they can't just take any pictures, haven't you? I have not done that, Your Honor. I did not ‑‑ I'm not aware if the client was so advised of that or not, Your Honor. And this is the first that I've heard that they're continuing to use these photographs. I have no knowledge one way or the other. Thank you. We ‑‑ I said that the electric case is the most recent case on point that I'm aware of in which the presumption was not applied, according, as the plaintiff says, it should have been applied. We also make note of the Merck aprova case in the briefing, which suggested in false advertising cases that a presumption of confusion or injury may apply in situations of comparative advertising or in a two‑product market. And that certainly was the case in the Merck case itself. The Merck case also discussed the Times Warner case, which counsel referred to this morning and referred to in their brief, and it characterized the Time Warner decision as a comparative advertising decision. So what the Merck court said is consistent with what the Times Warner court said. There might be some exceptions out there. But, again, I'm not aware of any false endorsement or any Section 1125A1A decision where the likelihood of confusion was done away with and found to be unnecessary. Well, why is it enough to establish intent to confuse that, you know, the clubs, your clients, knew that these individuals in the advertisements didn't endorse their work at the clubs? They had no affiliation, no relation to the club at all. That's correct. Why doesn't that reflect that they were trying to confuse people, the people who looked just like them either performed at or frequented the clubs? Well, as the evidence indicated in the record, Your Honor, they weren't trying to associate the individual persons. They were looking for photographs of good-looking women on the Internet and women that. . . Anonymous people. I'm sorry? Anonymous people. Well, they were anonymous people. But they were individuals. They were individuals. But they weren't playing on any particular reputation. We can go back to the Peroni case, which involved Babe Ruth, a famous baseball player. And the question there was, was his photograph distinctive? Was it a violation in a trademark sense to use his photograph without his permission? And the court said yes. And it said yes because the photograph was not distinctive in a trademark sense. It was not distinctive in a trademark sense because it was not associated with a particular product or particular service. And none of these photographs were either. They were photos of pretty women, and that was the whole purpose. And it was not an attempt to play off their reputation. It was not an attempt to play off their celebrity. The women were invisible then. The women had no character or no personality or no names to your clients. They were just women. Exactly correct, Your Honor. And that's why it was not a. . . The district court here found that it was a false endorsement, but it was not a bad faith false endorsement. And that's essentially what the electorate court found as well. The electorate court found that just because you make use of photographs and you don't investigate whether it's appropriate or a trademark violation to use those photographs, that's not a bad faith use of the photographs. Happy to answer any further questions or address any further questions. But if not, thank you very much. Thank you. Mr. Goldschutzky. Thank you. On the last point, bad faith is defined in this circuit as the attempt by a junior user to exploit the senior user's mark. That's what bad faith is described as. Your Honor, it's page 2 of our reply brief. And where is that? Of your reply brief to this court? No, I'm sorry. Of our reply brief below to Judge Ramos. Do you have an appendix cited? It is J.A. . . . All right. That's okay. I can find it. It's a . . . It's like 19 something. Defendant's attempt to distort the record and attack Chamberlain made clear that this issue is ripe for a trial on damages. The idea that we did not object when we were instructed specifically by Judge Ramos to provide briefing . . . What waiver would have looked like in this case is if Judge Ramos . . . I'm sorry. You didn't make a constitutional claim. I didn't make a constitutional claim. But you requested a trial. We requested a trial. The idea that we were in a position . . . I'm sorry. What waiver would have looked like in this case is if Judge Ramos said, I want to see briefing on the issue of whether or not you're entitled to a jury trial. And they argued that we were not, and we said nothing. That's what waiver would have been. There was no waiver here because we were never afforded the opportunity to make the argument. We were instructed to do something, and we did it. While referencing, while doing so, that we are entitled to a jury trial. I don't want to rehash the election decision. We appreciate and respect it as the law of the circuit. The problem with . . . Do you have any comments on Sousa? I do not. I accept that that is amplified in some ways. I disagree with aspects of it, but I've learned to live with my disappointment on that issue. My . . . What I do want to say, though, is the idea that women who have 15 million social media followers, who have appeared on magazine cover after magazine cover after magazine cover . . . You have one client who's in that position. Most of the others are not, do not have 15 million followers. Isn't that right? That's one, but I have plenty who have four, five, six million. Or somehow, the term anonymous is used with these women is very troubling. And I think this ties back to the election decision, which is, in a lecture, what the court said is on the strength of mark Polaroid factor. The district court, quote, properly analyzed the record of each appellant's public prominence to determine the strength of their marks. That's what the court said the district court properly did. That's not what happened here. What happened is Judge Ramos said, there is no survey evidence of recognizability. Ergo, the strength of mark factor favors respondents, even though we acknowledge that some of these plaintiffs have millions of social media followers and et cetera. All the indicia of public prominence that the Toff Court affirmed in a lecture, looked to, and indeed found that one of the plaintiffs did in fact have the enough, quote, public prominence. The district court didn't engage in any of that analysis. All the district court said was, is there a survey on recognizability? There is not. That's the end of it. So I think remand, just even on that issue alone, is important or appropriate because the district court has to engage in that public prominence analysis as per the letter of Electra. If you can wrap it up there. Yes, I will. The last thing I will just say, counsel said the district court found false endorsement, but he did not find bad faith false endorsement. He did not find false endorsement. He said that this is protected advertising activity. It's why to this day they continue to use my client's images. With that said, the rest of my papers. Thank you, Your Honor. I'm sorry. Sure. We're talking about the Lanham Act now. We are. I don't think that the right of publicity, and that was a statute of limitations issue. So if in fact they continue to use the images, wouldn't you have within statute of limitations claims or your clients have within statute of limitations claims for the current uses? I would not. I'm not saying that they republish them. I'm saying my client's images that were the issue of this lawsuit remain posted there. They would not have been republished, so I would not have a new cause of action under that. Thank you. Appreciate your arguments. Thank you very much. We'll take it under advisement. And our next case.